IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

James M. Carr, Sr.,                                       :

                    Plaintiff          :          Civil Action 2:13-cv-0762

   v.                                  :          Judge Frost

Jeff Noble, *et al.*,                  :          Magistrate Judge Abel

                    Defendant          :


**INITIAL SCREENING
REPORT AND RECOMMENDATION**

Plaintiff James M. Carr, Sr., an inmate at London Correctional Institution

("LoCI"), brings this prisoner civil rights action under 42 U.S.C. §1983. This matter is

before the Magistrate Judge for a Report and Recommendation on initial screening of

the complaint as required by 28 U.S.C. §1915A(a) and (b)[1] and 42 U.S.C. §1997e(c) to

---

[1]The full text of §1915A reads:

> (a) Screening.--The court shall review, before dock-
> eting, if feasible or, in any event, as soon as practicable after
> docketing, a complaint in a civil action in which a prisoner
> seeks redress from a governmental entity or officer or
> employee of a governmental entity.

> (b) Grounds for Dismissal.--On review the court shall
> identify cognizable claims or dismiss the complaint, or any
> portion of the complaint, if the complaint--

>> (1) is frivolous, malicious, or fails to state a
>> claim upon which relief may be granted; or

>> (2) seeks monetary relief from a defendant who
>> is immune from such relief.

identify cognizable claims, and to dismiss the complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  The Magistrate Judge finds that the complaint fails to state a claim upon which relief may be granted as to defendants Barns, Blackwell, Coble, Crisler, Croft, Davis, Hurst, Justus, Parish, Preston, Richardson, Stout, Taylor, and Waddell and therefore **RECOMMENDS** that they be **DISMISSED**, but further finds that at this early, initial screening stage the complaint arguably states claims for relief against defendants Cahill, Hall, Jackson, Mohr, Noble, and Timmerman-Cooper.

The complaint names as defendants Jeff Noble, Deputy Warden, Special Services, LoCI; DeCarlo M. Blackwell, Institutional Inspector, LoCI; Steve Cahill, Chaplain, LoCI; Thomas Davis, Chaplain, LoCI; Vickey Justus, Warden's Administrative Assistant, LoCI; Deb Timmerman-Cooper, Warden, LoCI; Travis Hall, Corrections Officer, LoCI; Stanley Taylor, Major, LoCI; Shirley Richardson, Captain, LoCI; Brian Preston, Sergeant, LoCI; J.D. Hurst, Health Care Asistant, LoCI; Russ Parish, Unit Management Administrator, LoCI; Steve Waddell, former Corrections Officer, LoCI; Jennifer Barns, Corrections Officer, LoCI; Matthew Crisler, Institutional Investigator, LoCI; Gary Mohr,

---

(c) Definition.--As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentence for, or adjudicated delinquent for, violations of criminal law or terms and conditions of parole, probation, pretrial release, or diversionary program.

2

Director, Ohio Department of Rehabilitation and Correction ("ODRC"); Wanza Jackson,

Religious Service Administrator, ODRC; T. Austin Stout, Publicatons Screening

Committee, ODRC; Don Coble, Assistant Chief Inspector, ODRC; Gary Croft, Chief

Inspector, ODRC; and John and Jane Doe's, Number 1 through 15. The complaint

alleges that defendants have interfered with plaintiff Carr's exercise of his Christian

Separatist faith. Carr is a follower of Christian Separatism, a Caucasian-based Christian

faith. Complaint, ¶ 82, Doc. 4, PageID 217. A number of the events alleged in the

complaint occurred more than two years before July 2013 and are not independently

actionable because there is a two-year statute of limitations for claims under 42 U.S.C. §

1983.  See, *Browning v. Pendleton,* 869 F.2d 982, 992 (6th Cir. 1989)(*en banc*)(statute of

limitations for § 1983 suit is two years); *Owens v. Okure,* 488 U.S. 235 (1989).

Consequently, this Report and Recommendation will only summarize the event alleged

in the complaint that occurred during July 2011 to the present.

On May 14, 2011, Carr filed a grievance on an Informal Complaint Resolution

("ICR") form challenging the constitutionality of DRC Policy 64-DCM-03 on the ground

that ODRC used the policy "to promote and enforce integration, an ideology which is

contrary to Scripture, as well as the religious belief of the Christian Separatist Church

Society." Complaint, Ex. 62, Doc. 4-11, PageID 411. On July 14, 2011, Carr sent a letter to

Andrew Albright, Chief, Bureau of Internal Audits and Standards Compliance, ODRC

asking where his ICR challenging DRC Policy 64-DCM-03(VI)(A) should be filed.

Complaint, ¶ 164 and Ex. 68, Docs. 4 and 4-11, PageID 228 and 418. Albright responded

that the grievance should be filed with DeCarlo Blackwell, the Institutional Inspector at LoCI. Complaint, Ex. 69, PageID 419.

On August 22, 2011, Carr filed a Notification of Grievance ("NOG" or "grievance") against Warden Timmerman-Cooper for her refusal to accept an application to have the Christian Separatist Church recognized as an "authorized" group under Ohio Administrative Code§ 5120-9-37(E)("O.A.C. §"). Complaint, ¶ 166 and Ex. 262, PageID 228 and 983-94. On September 2, 2012, Chief Inspector Gary Croft responded that Carr's request that the Christian Separatist Church be recognized as an authorized group at LoCI was "currently being reviewed per the provisions of ODRC Policy # 72-REG-Religious Accommodations" and that "a final decision will be rendered by the ODRC Religious Services Administrator . . . ." The grievance was denied on the ground that Carr had "failed to clearly indicate how Warden Timmerman-Cooper was personally and knowingly involved in a violation of law, rule, or policy and approved it or did nothing to prevent it." Complaint, Ex. 263, PageID 995.

On August 25, 2011, Carr filed an ICR with Warden Timmerman-Cooper complaining that she had improperly forwarded his letter to her to Deputy Warden Jeff Noble. The letter had complained that Noble had discriminated against members of the Christian Separatist Church when he said he would never approve "a group of this type" at LoCI. Complaint, ¶ 168 and Ex. 257, PageID 229 and 971-73. On October 5, 2011, Carr filed a grievance with LoCI Institutional Inspector DeCarlo M. Blackwell asserting that Deputy Warden Noble's comment above discriminated against him

4

because of his Christian Separatist religious beliefs. Complaint, ¶ 169 and Ex. 258, PageID 229 and 978. On November 1, 2011, Blackwell responded that Carr's request for religious accommodation for his Christian Separatist faith was denied February 1, 2011 by Dr. Wanza Jackson, Religious Service Administrator, and that he could not obtain review of that decision through the LoCI Chaplain, Deputy Warden Noble, or the Warden. Complaint, ¶ 170 and Ex. 259, PageID 229 and 979. Carr appealed that resolution of his grievance to the Chief Inspector's Office. Complaint, ¶ 171 and Ex. 260, PageID 229 and 980. On December 16, 2011, ODRC Assistant Chief Inspector Don Coble affirmed DeCarlo's disposition of the grievance because the decision to deny his request for religious accommodation was made by the Religious Services Administrator and could not be reviewed by Deputy Warden Noble. Complaint, ¶ 172 and Ex. 261, PageID 229 and 980.

On July 12, 2011, Carr kited LoCI Chaplain Steve Cahill requesting that he use money from the I&E Fund to purchase Christian Separatist faith materials previously approved by the Central Office Publication Screening Committee and make the materials available to LoCI inmates. Complaint, ¶ 174 and Ex. 71, PageID 230 and 421. Cahill responded that LoCI did not use ODRC funding to purchase religious materials for inmates. Complaint, ¶ 175 and Ex. 71, PageID 230 and 421. Carr then made a religious accommodation request for the materials, which was denied by the Cahill, the LoCI Religious Accommodation Committee (Noble, Taylor, and Cahill), and Warden Timmerman-Cooper. Complaint, ¶¶ 176-180, PageID 230. Religious Services

5

Administrator Wanza Jackson denied the request for religious accommodation on the ground that the office did not procure books for inmate libraries. Complaint, ¶ 181 and Ex. 75, PageID 230 and 426.

On February 17, 2012, Pastor V.S. Herrell, Christian Separatist Church Society, donated for the prison library four books he authored, *The Baptism of Fire, The History of the Bible, The Racial War at Baal-Peo,* and *The Sixth Law of God,* and *Acts,* Chapters 3 and 4, Disc 1 of 1 on compact disc. Complaint, ¶ 188 and Ex. 81, PageID 230 and 440. All these books had been approved by the ODRC central office publication screening committee. Complaint, ¶ 191-93 and Exs. 82-86, PageID 231 and 443-50. Cahill, Noble and Timmerman-Cooper (Vickey Justice responded on behalf of the warden) rejected Carr's requests that the books be made available to the general population of LoCI in the chaplain's office or library, maintaining they had no obligation to "publicly display" the books. They said he could possess the books himself by having them sent directly to him. Complaint, ¶ 203-15 and Exs. 88-90, PageID 233-34 and 457-91.

On March 27, 2012, Carr filed a grievance with Blackwell about the refusal of Cahill, Noble, Justus and Timmerman-Cooper to permit the donated Christian Separatist Church Society to be made available to inmates in the chaplain's office in the same manner as religious materials of other religious faiths. Complaint, ¶ 216 and Ex. 91, PageID 234 and 492. Blackwell responded, in relevant part:

> [Y]our constitutional rights are not being violated because you are not being denied an opportunity to practice your white separatist faith. You are allowed to order and obtain the information for yourself. However,

6

> you want the ability to spread this racially inflammatory information that
> is hidden behind religion to the general population at LoCI. You have
> been previously informed that you can practice your faith by the Admin-
> istration and Chaplain will not accept donated material that may disrupt
> the orderly operation of the institution at LoCI.

Complaint, Ex. 92, PageID 493. On appeal, Blackwell's disposition of the grievance was affirmed. Complaint, ¶ 223-25 and Exs. 93 and 94, PageID 236 and 494-95.

Over the following months, Carr had further communications with Mohr, Jackson, Timmerman-Cooper, Justus, LoCI Chaplain Cahill, and LoCI Chaplain Thomas Davis about his efforts to place Christian Separatist literature in the chaplain's office or chaplain's library. Complaint, ¶¶ 229-36 and 240-42 and Exs. 103-10, PageID 237-39 and 507-55. In July 2012, Carr filed another grievance alleging that the Christian Separatist faith was being discriminated against by the exclusion of its literature from the chapel library. Complaint, Ex. 112, PageID 568-79.The grievance was denied by Chief Inspector Croft on the ground that the issue raised had already been the subject of an earlier grievance. Further, Croft stated: "This office will take no further action on this matter at this time." Complaint, Ex. 113, PageID 980. Undeterred, Carr filed another grievance in August 2012 making the same argument, but supporting it with the allegation that LoCI permitted African-American Islamic separatism[2] to be taught but not the Christian

----

[2]In January 2011, another prisoner told Carr that the Islamic Services Contractor at LoCI was a member of the Nation of Islam, which he believes is an African-American Separatist religious faith. *Message to the Black Man in America*, by Elijah Muhammad was approved by the Publication Screening Committee, and a Nation of Islam video titled "Saviors Day February 1999, the Doctrine of the Honorable Minister Louis Farrakham" was shown to LoCI inmates in February 2012. Carr believes the current Islamic services provider at LoCI teaches Nation of Islam doctrine. Carr filed ICRs and NOGs regarding

Separatist faith. Complaint, Ex. 114, PageID 980. LoCI Inspector Blackwell responded, in part:

> . . . Iman Shahid does not represent the Nation of Islam just because he practices and teaches the Islamic faith at LoCI. Furthermore, there are white inmates at LoCI who practice Islam and they attend the same services that Iman Shahid teaches. So to insinuate that he is teaching separatist is ridiculous and offensive to him. Iman Shahid is a part of the American Muslim Movement which practices mainstream Islam. The Islamic Faith includes people from all nations, races and creeds.

> Inmate Carr you are searching to justify your own racist views which you disguise under religion. You are free to practice Christian Separatism on your own. However, you are not allowed to recruit people under the notion of religion. . . .

> . . . . You may continue to practice your racist beliefs which you try to hide in the name of religion. However, LoCI will not allow you to spread your racist ideologies under the name of religion. . . .

Complaint, Ex. 114, PageID 581. Carr also filed grievances making the argument that defendants Croft, Timmerman-Cooper, and Blackwell were discriminating against the Christian Separatist faith. Complaint, ¶¶ 245-248, PageID 240. These grievances were denied. *Id.*

Carr persisted in his efforts to make Christian Separatist faith literature available to inmates at LoCI through a series of kites and grievances. Complaint, ¶¶ 249-52, PageID 240-41. On February 4, 2013, Carr filed another grievance about the refusal of the LoCI chaplain to accept donated Christian Separatist faith literature for the

the teaching of Nation of Islam doctrine at LoCI. Finally, the February 2012 issue of a newsletter directed to Islamic inmates and distributed through the chapel contained specific language for which Carr's publications have been excluded. Complaint, ¶¶ 403-27 and 455 and Ex. 310, PageID 270-73 277 and 1089-94.

chaplain's library to make them available to other inmates. He said that Christian Separatist faith literature was available to inmates at the Ross Correctional Institution. Complaint, ¶ 313 and Ex. 170, PageID 253 and 706. Inspector Blackwell denied the grievance, stating that "[t]he Chapel is not a place for disharmony or disruption based upon your belief that the 'white race' is superior to minorities. The LoCI Chaplains continue to have programs, services and literature that is inclusive and serves all inmates. . . . You will not use the LoCI Chapel as a recruiting tool to spread racist beliefs among the inmate population. You are entitled to believe and practice your religion." Complaint, Ex. 171, PageID 708. Assistant Chief Inspector Coble found that Blackwell had appropriately responded to Carr's complaint. Complaint, Ex. 173, PageID 713.

On February 4, 2013, Carr filed a grievance against Warden Timmerman-Cooper complaining that she refused to permit Christian Separatist faith material to be donated to the chapel library so it could be available to all inmates just as the religious materials of other faiths are available there to all inmates. Complaint, ¶ 338 and Ex. 176, PageID 258 and 728. As of the date of the filing of the complaint, Chief Inspector Croft had not responded to the grievance. Complaint, ¶ 340, PageID 258-59. Carr filed further, duplicative kites, grievances and appeals regarding his attempts to donate Christian Separatist faith literature to the chapel library. Complaint, ¶ 342-46, PageID 259-60. During March - May 2013, Carr made further attempts to donate Christian Separatist faith literature to the chapel library, complaining that it was discriminatory that other faiths' literature was in the library but not that of his faith. Complaint, ¶¶ 366-83,

PageID 264-66. There is no Christian Separatist faith literature or study material available in the LoCI chaplain's office or chapel library. Complaint, ¶ 173 and Ex. 70, PageID 229 and 420.

On October 31, 2012, defendant Hall notified Carr that 12 CDs sent to him by the Christian Separatist Church Society had been withheld from him. Complaint, ¶ 256 and Ex. 120, PageID 241-42 and 593. Carr filed a grievance with LoCI Inspector Blackwell, Complaint ¶ 264, who denied it:

> . . . [I]t is not a practice for the mailroom staff to open CDs because once they are open then you cannot return them. . . . [A]s with other questionable CDs they are forwarded to the Operation Support Center for screening.

> [M]usic is not treated the same as a book or magazine where staff can turn to a certain page. Also, since the CDs in question are not musical it is more evident that it is acceptable for the mailroom staff to send your CDs to the Operation Support Center to be screened. There were no violations by staff.

Complaint, Ex. 124, PageID 618. On appeal, defendant Coble affirmed Blackwell's disposition of the grievance but recommended that LoCI review CDs at the prison, going online to review song lyrics. Complaint, Ex. 126, PageID 620.

In November 2012, defendant Hall withheld Christian Separatist CDs titled "Spurious Book", "Unity is not Divisive" and "Luke Chapter 1" because he found they contained possibly inflammatory material. Complaint ¶ 268 and Ex. 127-29, PageID 244 and 621-23. On November 21, 2012, Carr filed a grievance arguing that proper ODRC procedure was not followed, burdening his exercise of his Christian Separatist faith.

Complaint 274 and Ex. 132, PageID 245 and 629. Inspector Blackwell responded that defendant Noble was in the process of reviewing the material that had earlier been sent to the Operation Support Center without first being screened at LoCI. When Noble completed his screening, plaintiff could then appeal any adverse ruling to the Operation Support Center. Complaint, Ex. 133, PageID 630. Carr appealed that disposition of the greievance to the Chief Inspector, and defendant Coble upheld the disposition because Deputy Warden Noble was the proper person to screen the material. Complaint, Exs. 134 and 135, PageID 631-32.

The complaint further alleges that from around the end of October 2012 to the beginning of December 2012 there was a blanket ban on Carr receiving Christian Separatist faith literature. Complaint, ¶ 288, PageID 248. On November 14, 2012, defendant Hall withheld Carr's 11-1-12 Church Newsletter on the ground that it appeared to be "racial in nature" and "present[ed] a threat to the security and safety of the institution, its staff or inmates." Complaint, Ex. 137, PageID 639. Carr complained to Warden Timmerman-Cooper that the withholding of the Church Newsletter "is proof that the Institution's mail room currently has a blanket ban on all of my religious material received by the  Christian Separatist Church Society . . . ." *Id.,* PageID 642. He also filed complaints/grievances with Captain Richardson and Inspector Blackwell alleging that since November 1 there had been a blanket ban on his receiving Christian Separatist Church literature. Complaint, Ex. 138-39, PageID 646-50. Blackwell responded that Captain Richardson said that there was no blanket ban. Some Christian

Separatist faith materials initially screened at LoCI had been sent to the Operations

Support Center for further screening. Complaint, Ex. 140, PageID 651. Carr appealed

Blackwell's disposition of the grievance to the Chief Inspector, and Assistant Chief

Inspector Coble affirmed the disposition of the grievance. Complaint, Exs. 141 and 142,

PageID 652-54. On March 29, 2013, Carr was provided six Christian Separatist faith CDs

that had all been screened "approved". Complaint, ¶ 434, PageID 274. During February

- May 2013, Carr had more disputes regarding the screening of Christian Separatist faith

literature and filed grievances and appeals from the disposition of those grievances.

Complaint, ¶¶ 347-365, PageID 260-64.

On May 1, 2013, Carr sent Warden Timmerman-Cooper a kite requesting

permission to purchase a copy of *Positive Christianity in the Third Reich*, a publication

that inmate Damron was permitted to keep in his possession at the Ross Correctional

Institution. Complaint, ¶ 394 and Ex. 218, PageID 268-69 and 810-22. On May 8 and May

14, 2013, Carr kited Warden Timmerman-Cooper and Deputy Warden Noble,

respectively, requesting that he be permitted to take possession of his copy of *Positive

Christianity in the Third Reich*, which had arrived at LoCI. Complaint, ¶¶ 401 and 402,

PageID 270. On May 20,2013, Carr filed a grievance against Warden Timmerman-

Cooper for permitting and approving the withholding of *Positive Christianity in the Third

Reich*. Complaint, ¶ 435 and Ex. 248, PageID 274 and 945-62. On June 7, 2013, Carr sent

another kite to Warden Timmerman-Cooper requesting that the book be given to him.

Complaint, ¶ 441, PageID 275. Vickey Justus, the Warden's administrative assistant,

responded the the STG Committee had reviewed the book and sent it to the Publication Screening Committee for further review. Complaint, ¶ 443, PageID 275.

On May 1, 2013, Carr sent a letter to Robin Knab, ODRC Southern Regional Director, requesting a response from Chief Inspector Croft on six grievance appeals his office had not responded to. Complaint, ¶ 395 and Ex. 219, PageID 269 and 823. On June 26, 2013, Carr went to Inspector Blackwell's office and asked him to see whether the Chief Inspector had ruled on the six grievance appeals. There had been dispositions of all six on May 28, but Carr had not been notified. Complaint, ¶ 447, PageID 276. Also on May 1, 2013, Carr wrote T. Austin Stout, a member or ODRC's Publication Screening Committee, expressing his concerns about how his Christian Separatist faith materials were being screened and asking about the status of some screenings. Complaint, ¶ 396 and Ex. 221, PageID 269 and 829-49.

On December 11, 2012, Carr kited the Chaplain's Office requesting as a religious accommodation to be exempted from the ten CD limit and be permitted to possess 30 approved Christian Separatist faith CDs. He said that the only way he could participate in church services was to listen to sermons on CD, and the only way he could study and further his knowledge of his Christian Separatist faith was to study the CDs his church sent him and study the Bible. Complaint, Ex. 166, PageID 694. Defendants Cahill and Timmerman-Cooper denied the accommodation, advising Carr that he could possess 10 CDs at a time as well as printed literature. Complaint, Ex. 167, PageID 700-01.Carr appealed their decision to ODRC Religious Service Administrator Wanza Jackson, who

denied the requested exemption. Complaint, Exs. 168 and 168A, PageID 700-01. On February 1, 2013, Deputy Warden Noble would not permit Carr to donate his excess CDs to the Chaplain's library and forced him to send all of his CDs exceeding the 10 CD limit out of the prison. Complaint, ¶ 317, PageID 254.

On May 6, 2013, Carr got two Christian Separatist CDs that were screened "approved", "1 Corinthians Chapter 15" and "Resurrection Sunday 2013", but had to send two CDs out of the prison because of the limit on the number of CDs an inmate can possess. Complaint, ¶¶ 399 and 431, PageID 269-70 and 273-74. On May 8, 2013, four more CDs were screened "approved", and Carr had to send four CDs out of the prison to take possession of the new CDs. Complaint, ¶ 400, PageID 270. On June 3, 5 and 6, 2013 Carr got one Christian Separatist CD screened "approved" on each day, but had to send one CD out of the prison each time. Complaint, ¶ 438-40, PageID 275. On June 17, 2013, Carr received another Christian Separatist CD and was forced to mail one CD out of the prison. Complaint, ¶ 446, PageID 276. On July 1, 8, 15 and 18, 2013, Carr received one Christian Separatist CD on that day and had to send one CD out of the prison. Complaint, ¶ 451-54, PageID 277.

On November 21, 2012, Carr filed grievances complaining about how Inspector Blackwell handled his grievances and asserting that Blackwell acted with the intent to discriminate against him because of his race and disfavored Caucasian-based Christian Separatist faith. Complaint, ¶¶ 285 and 287 and Exs. 143 and 272, PageID 247, 655 and 1011. Assistant Chief Inspector Croft denied one of the grievances, stating that Carr's

14

remedy was to appeal the disposition of his grievance, not to file a grievance against the inspector. He further concluded that Carr had no grounds to file a grievance against Blackwell. Complaint, Ex. 144, PageID 662. Croft has never made a decision on the other grievance. Complaint, ¶ 289, PageID 247-48.

On December 5, 2012, Deputy Warden Jeff Noble called Carr to his office and "attempted to intimidate Plaintiff due to his disfavored Caucasian-based CS religious faith, and also with the intent to place a substantial burden on Plaintiff's practice of religion; by, *inter alia,* 'suggesting' in an intimidating manner, that Plaintiff stop ordering and receiving his religious materials . . . ." Complaint, ¶ 294, PageID 249. During this meeting, Noble gave Carr corrected forms notifying him that four other CDs had been withheld by Hall on October 30, 2012. Complaint, ¶ 295, PageID 249-50. Carr appealed Noble's decision to withhold the materials. Complaint, ¶ 296, PageID 250. In early May 2013, Carr received notices from the Publication Screening Committee advising him that two of the four CDs were permitted into the prison and two were not. Complaint, ¶¶ 297 and 298 and Exs. 151, 154, 157, and 160, PageID 250, 651, 657, 679 and 683. Deputy Warden Noble provided the two CDs to Carr. Complaint, ¶ 299 and Ex. 161, PageID 250 and 684. On April 13, 2013, Carr transmitted an ICR to Deputy Warden Noble complaining about the slow screening of his Christian Separatist faith CDs. Complaint, Ex. 210, PageID 793. On May 6, 2013, Carr filed a grievance with Inspector Blackwell, making the same complaint. Complaint, Ex. 211, PageID 794. On May 15, 2013, Blackwell responded that considering the amount of material and Deputy

15

Warden Noble's other duties, the screening of the materials was not untimely.

Complaint, Ex. 212, PageID 797. Carr appealed the disposition, and on June 13, 2013

Assistant Chief Inspector Coble affirmed Blackwell's disposition. Complaint, Ex. 213A,

PageID 801.

On April 23, 2013, Inspector Blackwell asked Chief Inspector Croft to suspend

Carr's right to use the inmate grievance procedure for 90 days. Blackwell asserted that

Carr "continues to misuse and abuse the Inmate Grievance Procedure by filing

countless and unnecessary Informal Complaints (ICR), Notification of Grievances

(NOG) and Chief Inspector Appeal forms for the same thing." Blackwell had previously

advised Carr that "filing needless complaints will lead to a suspension." Under A.R.

5120-9-13, a suspended inmate is permitted to file two ICRs and two NOGs a month.

There are no restrictions on kites. Chief Inspector Croft imposed the 90 day suspension.

Complaint, ¶¶ 391 and 392 and Ex. 216, PageID 268 and 807-08. On May 7, 2013, Carr

asked Blackwell for permission to file a grievance against him for placing him on the 90

day grievance suspension, and Blackwell told him he could not file the grievance.

Complaint, ¶ 393, PageID 268.

On April 18, 2012, Carr sent a letter to ODRC Director Gary Mohr requesting

official recognition and approval of the Christian Separatist religion. Complaint, ¶ 222

and Ex. 97, PageID 236 and 499. On August 22, 2011, Douglas R. McKusik, Staff

Attorney, The Rutherford Institute, wrote a letter to Mohr on behalf of Carr asking the

Department to give official recognition to the Christian Separatist faith, to refrain from

16

withholding from Carr Christian Separatist literature, and to permit him to practice his religious faith unhindered by lengthy delays in delivering Christian Separatist literature to him. Complaint, Ex. 76, PageID 427-29. Wanza Jackson, Religious Service Administrator responded that ODRC's policy is that inmates have freedom of conscience to seek and/or subscribe to any religious belief. Complaint, Ex. 77, PageID 430. On December 18, 2012, Carr asked Russ Parish, Unit Management Administrator, permission to make a confidential attorney-client call to McKusick regarding the matters discussed in his August 22, 2011 letter to Mohr and new developments since then at LoCI involving violations of his constitutional rights. Parish responded: "Considering this letter is dated August 22, 2011, I will confer with Warden Cooper before any phone call is granted." Complaint, Ex. 283, PageID 1025.  Parish later informed Carr that he was not going to grant the request. Complaint, ¶ 329, PageID 256. On February 4, 2013, Carr filed a grievance against Warden Timmerman-Cooper for denying him the phone call with the intent to discriminate against him due to his disfavored Caucasian-based Christian Separatist religious faith and to burden his free exercise of that faith. Complaint, ¶ 330 and Ex. 284, PageID 256 and 1027. At the time of the filing of the complaint, Carr had not received a response to the grievance. Complaint, ¶ 332, PageID 257. In a separate grievance filed the same day, Carr made the same complaint. Inspector Blackwell responded that McKusick was not his attorney of record, but he was tentatively approved on his visiting list. Carr was free to call him either collect or using his own calling card. Since he was not indigent, the call would be

17

at his expense. Complaint, Exs. 288 and 289, PageID 1040-41. Carr appeal, and Assistant Chief Inspector Coble affirmed Blackwell's disposition of the grievance.

Claims pleaded. The complaint pleads claims for violation of plaintiff's free exercise of his Christian Separatist faith; violation of his freedom of conscience right under Article I, Section 7 of the Ohio Constitution; the unlawful establishment of religion; the unlawful preference of a religion; the denial of the equal protection and benefit clause of Article I, Section 2 of the Ohio Constitution; unlawful racial discrimination in violation of the First, Fifth, and Fourteenth Amendments to the United States Constitution; retaliation for the exercise of his constitutional rights; unlawful censorship in violation of the First Amendment to the United States Constitution; violations of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc, *et seq.*

Relief sought. The complaint prays for injunctive relief, declaratory relief, nominal damages, and punitive damages. This relief is sought for defendants' refusal to make religious materials donated by the Christian Separatist Church Society available to plaintiff; their discrimination against plaintiff Carr because of his race and/or disfavored Christian Separatist religious beliefs; their retaliatory conduct unnecessarily restricting his access to religious materials, chilling his right to petition for redress of grievances, and burdening his exercise of his constitutional rights; their conduct burdening his ability to engage in and practice his Christian Separatist faith; their violation of plaintiff's constitutional and RLUIPA rights by withholding from him his

18

copy of *Positive Christianity in the Third Reich*; their withholding from him other Christian Separatist faith publications (CDs); their violating his rights under RLUIPA by withholding religious materials while "lesser restrictive" options are available; their violation of RLUIPA by selectively enforcing prison policies and practices to prevent plaintiff from practicing his Christian Separatist faith; their violation of RLUIPA by handling the pre-screening of plaintiff's religious materials differently than those of inmates who practiced other faiths; their violation of RLUIPA by refusing to recognize the Christian Separatist faith as an "authorized" or "approved" religion. Complaint, Prayer for Relief, PageID 294-303.

 <u>Analysis</u>. Rule 8(a), Federal Rules of Civil Procedure provides for notice pleading. *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  The United States Supreme Court held in *Erickson v. Pardus*, 551 U.S. 89, 93 (2007):

> . . . Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Specific facts showing that the pleader is entitled to relief are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.': *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555, 127 S.Ct. 1955 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Moreover, *pro se* complaints must be liberally construed.  *Erickson*, 551 U.S. at 94; *Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980). Nonetheless, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' *Twombly*, 550 U.S. at 570." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

 In order to state a *prima facie* free exercise of religion claim, an inmate must show:

(1) that the practice he seeks to protect is religious in his "scheme of things"; (2) that his religious conviction is sincerely held; and (3) that the behavior of the defendants infringes upon his religious practice or belief.  *See Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *Weaver v. Jago*, 675 F.2d 116, 118 (6th Cir. 1982); *Carpenter v. Wilkinson*, 946 F. Supp. 522, 525 (N.D. Ohio 1996); *Wellmaker v. Dahill*, 836 F. Supp. 1375, 1380 (N.D. Ohio 1993); *Abdool-Rashaad v. Seiter*, 690 F. Supp. 598, 601 (S.D. Ohio 1987).

Defendants Croft, Coble, and Blackwell. Prison officials whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged retaliatory behavior" cannot be liable under §1983.  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984); *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982). Despite the conclusory allegations in the complaint that these defendants joined a conspiracy to discriminate against plaintiff Carr because of his Christian Separatist faith and Caucasian race and to deprive him of the right to the free exercise of his religious beliefs, there are no factual allegations that, if proven, would demonstrate that these defendants did anything other than perform their duties as prison employees charged with the responsibility to operate ODRC's grievance process. Consequently, the complaint fails to state any claims for relief against them.

I recognize that some of Inspector Blackwell's responses to Carr's grievances were sharply worded, but he was not the decision-maker. His dispositions of grievances are merely what the grievance process intended them to be, a statement of what the

decision-markers told him about the action(s) they took and his recommendation for disposition of the grievance. That does not make him a decision-maker who is responsible for the conduct plaintiff alleges is actionable because it violates the constitution or federal law.

The complaint also alleges that the April 2013 decision of Blackwell and Croft to place plaintiff on a 90 day grievance suspension is actionable. No constitutional right was violated. The complaint demonstrates that plaintiff filed many grievances and that a number of those grievances mostly rehashed earlier grievances. The grievance procedure is available to all inmates, and an inmate who files multiple grievances raising the same issues impairs the ability of other inmates to have their grievances resolved. Blackwell's and Croft's judgment that Carr's grievances had become so numerous and so repetitive that they needed to be restricted was one entrusted to them by the administrative regulations and does not implicate any federal constitutional or statutory right. In any event, the restriction did not, in fact, impede Carr's ability to grieve matters of serious concern to him. He had the right to file two ICRs and 2 NOGs each month, and he had the unlimited right to write kites expressing his concerns.

Defendants Barns, Crisler, Davis, Hurst, Justus, Parish, Preston, Parish, Stout, Taylor, and Waddell. There are no allegations in the complaint against these defendants that state a claim for relief. Thomas Davis is a Chaplain at LoCI. The complaint does not allege that he was the decision-maker who acted to deny plaintiff any constitutional or statutory right. The complaint contains no allegations that, if proven, would

demonstrate that defendants Barns, Crisler, Hurst, Parish, Preston, Taylor or Waddell acted to deny plaintiff any constitutional or statutory right. Defendant Justus is Warden Timmerman-Cooper's administrative assistant. All the complaint alleges is that she responded to several communications from plaintiff Carr at the direction of the warden. The complaint does not allege that she individually took any action to deprive him of a constitutional or statutory right.

<u>Defendants Cahill, Hall, Jackson, Mohr, Noble, and Timmerman-Cooper</u>. At this early stage on initial screening, the complaint arguably states claims against these defendants for interfering with plaintiff Carr's constitutional and RLUIPA right to exercise his Christian Separatist faith.

<u>Free exercise of reigious beliefs</u>. Free exercise challenges brought by inmates are subject to the rational basis test articulated by the Supreme Court in *Turner v. Safley*, 482 U.S. 78, 89-90 (1987).  In *Turner*, the Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  482 U.S. at 89.

The Supreme Court has outlined four factors that are relevant in determining the reasonableness of a challenged prison policy or regulation.  First, there must be a "valid, rational connection" between the prison restriction and the legitimate governmental interest put forward to justify it.  *See id*. at 89.  If not, the regulation is unconstitutional, and the other factors do not matter.  *See Spies v. Voinovich*, 173 F.3d 398, 403 (1999); *Muhammad v. Pitcher*, 35 F.3d 1081, 1084 (6th Cir. 1994).

Unlike the first factor, the remaining factors are considerations that must be balanced together:  "whether there are alternative means of exercising the right that remain open to prison inmates"; "the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and whether there are "ready alternatives" available "that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests."  *Spies*, 173 F.3d at 403 (quoting *Turner*, 482 U.S. at 90-91).

Although prison officials are required under *Turner* to articulate and provide evidence showing a legitimate governmental interest for impinging on an inmate's constitutional rights, *see* Sept. 10, 1999 Order, doc. 57, pp. 13-14; *Schock v. Redman*, No. 90-1462, 1991 WL 11616, at *1, 3 (6th Cir. Feb. 5, 1991); *Aqeel v. Seiter*, No. 90-3045, 1991 WL 2990, at *1 (6th Cir. Jan. 15, 1991), courts are required to give deference to the reasoning of prison officials so long as the proffered justification is not "arbitrary or irrational" or an "exaggerated response."  *See Lewis v. Casey*, 518 U.S. 343, 361-62 (1996); *Turner*, 482 U.S. at 89-90; *Sheets v. Moore*, 97 F.3d 164, 169 (6th Cir. 1996).  Moreover, courts generally accord great deference to prison officials' adoption and execution of policies, regulations, and practices relating to the preservation of internal order, discipline, and security within the prison environment.  *See Goss v. Myers*, No. 99-5544, 2000 WL 125905, at *1 (6th Cir. Jan. 28, 2000)(citing *Thornburgh v. Abbott*, 490 U.S. 401, 407-08 (1989); *Turner*, 482 U.S. at 85; *Bazzetta v. McGinnis*, 124 F.3d 774, 779 (6th Cir. 1997), *as supplemented*, 133 F.3d 382 (6th Cir.), *cert. denied*, 524 U.S. 953 (1998)).

Religious Land Use and Institutionalized Persons Act, 2000cc-1 ("RLUIPA").

RLUIPA requires the state to show that any substantial burden on a prisoner's religious

exercise is the least restrictive means of furthering a compelling government interest.

*Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005). Courts considering RLUIPA claims need to

appropriately balance the prison's need to maintain order and safety with the rights

protected by the Act. *Cutter,* 544 U.S. at 722-23.

Claims pleaded against defendants Cahill, Hall, Jackson, Mohr, Noble, and

Timmerman-Cooper. Briefly, the complaint contains the following actionable

allegations against these defendants.

Director Mohr. The complaint alleges Mohr did not act to approve Carr's request

that ODCR give recognition and approval to the Christian Separatist religion.

Complaint ¶ 222.

Wanza Jackson, Religious Service Administrator. The complaint makes the

following allegations. Jackson denied plaintiff's request for accommodation of his

Christian Separatist faith. Complaint ¶ 170. Jackson denied Carr's request that Christian

Separatist faith literature be made available to inmates in the chapel library. Complaint

¶¶ 181, 229-36, and 240-42. He rejected Carr's request that the prison waive the 10 CD

limits so that he could possess up to 30 Christian Separatist CDs. Complaint Exh. 168

and 168A.

LoCI Warden Deb Timmerman-Cooper. The complaint makes the following

allegations. Warden Timmerman-Cooper refused to recognize the Christian Separatist

faith. Complaint ¶ 166. She refused to permit Carr and the Christian Separatist Church Society to donate Christian Separatist faith CDs to the chapel library so that they could be made available to inmates. Complaint ¶¶ 186, 191-93, 203-15, 229-36, and 240-42. The warden withheld from Carr *Positive Christianity in the Third Reich.* Complaint ¶ 401-02 and 441. And she refused to waive the 10 CD limit. Complaint Exs. 166-68.

LoCI Deputy Warden Jeff Noble. The complaint makes the following allegations. Noble made a statement that demonstrated his intent to discriminate against the Christian Separatist faith. Complaint ¶¶ 168-69. He refused to permit Carr and the Christian Separatist Church Society to donate Christian Separatist faith CDs to the chapel library so that they could be made available to inmates. Complaint ¶¶ 176-80, 191-93, 203-15, and 371. He also withheld from Carr *Positive Christianity in the Third Reich.* Complaint ¶ 401-02. Noble attempted to intimidate Carr to stop ordering and receiving Christian Separatist material. Complaint ¶ 294. Finally, he slowed the process of screening Carr's Christian Separatist faith CDs. Complaint ¶ 294.

LoCI Chaplain Steve Cahill. The complaint makes the following allegations. Cahill refused to make Christian Separatist literature available to inmates in the chapel library. Complaint ¶¶ 174-80, 191-93, and 203-15. He refused to waive the 10 CD limit. Complaint Ex. 166-67.

Corrections Officer Travis Hall. The complaint makes the following allegations. On October 31, 2012, Corrections Officer Hall withheld 12 Christian Separatist Church Society CDs from Carr. Complaint ¶ 256. In November 2012, he withheld three more

Christian Separatist CDs because he found they contained possibly inflammatory material. Complaint ¶ 268. From the end of October 2012 to the beginning of December 2012, there was a blanket ban on plaintiff receiving Christian Separatist materials. Complaint, ¶ 288. Hall withheld a November 2012  Christian Separatist Church newsletter from Carr because it appeared to be racial in nature and to pose a threat to the prison. Complaint Ex. 137, PageID 642.

Accordingly, it is hereby **RECOMMENDED** that defendants Barns, Blackwell, Coble, Crisler, Croft, Davis, Hurst, Justus, Parish, Preston, Richardson, Stout, Taylor, and Waddell be **DISMISSED** because the complaint fails to state a claim upon which relief may be granted against them. It is **FURTHER RECOMMENDED** that this action continue against defendants Cahill, Hall, Jackson, Mohr, Noble, and Timmerman-Cooper because at this early, initial screening stage the complaint arguably states claims for relief against them.

**IT IS FURTHER ORDERED** that the United States Marshal serve upon each defendant named in part III, B and C of the form civil rights complaint a summons, a copy of the complaint, and a copy of this Order.  Defendants Barns, Blackwell, Coble, Crisler, Croft, Davis, Hurst, Justus, Parish, Preston, Richardson, Stout, Taylor, and Waddell are not required to answer the complaint unless later ordered to do so by the Court.

The Clerk of Court is DIRECTED to mail a copy of this Order to the Attorney General of Ohio, Corrections Litigation Section, 150 East Gay St., 16th Floor, Columbus,

OH 43215.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. See 28 U.S.C. §636(b)(1)(B); Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to de novo review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Small v. Secretary of Health and Human Service*s, 892 F.2d 15, 16 (2d Cir. 1989).


                                                  s/Mark R. Abel
                                                  United States Magistrate Judge